UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNIE ANDREWS | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:21-CV-264 (JCH) |
| v. | : | |
| | : | |
| ENDRI DRAGOI, | : | |
|     Defendant. | : | JULY 8, 2022 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOC. NO. 30)**

**I.  INTRODUCTION**

This action concerns claims brought by plaintiff Donnie Andrews ("Andrews") arising from a vehicle search executed by the defendant, Endri Dragoi ("Dragoi"), a New Haven police officer.  Andrews alleges that Dragoi tortiously filed a false Police Report and violated Andrews' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

Now before the court is Dragoi's Motion for Summary Judgment.  See Mot. for Summary J. (Doc. No. 30).  For the reasons explained below, the court grants Dragoi's Motion.

**II.  BACKGROUND**

    A.  Factual Background

Andrews has admitted all but three paragraphs of Dragoi's sixty-nine paragraph Statement of Material Facts and has submitted no additional material facts.  See Andrews Local Rule 56(a)(2) Statement of Material Facts (Doc. No. 32-1) ("Pl.'s SOF"); see also Dragoi Local Rule 56(a)(1) Statement of Material Facts (Doc. No. 30-2) ("Def.'s

1

SOF") (together, "Joint SOF").  Therefore, the court adopts the parties' statements of facts to the extent that they overlap, as briefly restated below.

On October 18, 2018, Andrews was driving his girlfriend's green Volvo S-80 with heavily tinted windows in New Haven, Connecticut.  Joint SOF at ¶¶ 1, 17, 29.  As Andrews turned left from Edgewood Drive onto Norton Street,  Dragoi pulled behind him, flashing the lights on his police cruiser to bring Andrews' car to a stop.  Id. at ¶¶ 7-8.  Andrews pulled over.  Id. at ¶ 8.

Dragoi, who was wearing an active body camera, left his police cruiser and walked up to Andrews' driver-side window.  Id. at ¶¶ 16, 18.  The body camera video shows that the two began to talk, and Dragoi suggested that he had seen Andrews run a red light.  Id. at ¶ 21.  Andrews replied he had tried to make the light before it changed.  Id.  Dragoi then asked Andrews for his license, registration, and insurance, and Andrews responded that he did not have a license.  Id. at ¶¶ 22-23.  The two continued talking while Andrews looked for the car's paperwork.  Id. at ¶ 27.  Dragoi noted that he smelled "freshly burnt marijuana" and asked Andrews whether he or his passenger had any marijuana in the car.  Id. at ¶¶ 30-33.  Both Andrews and his passenger responded that they had no marijuana, but Andrews explained that his girlfriend, the vehicle's owner, smoked marijuana.  Id. at ¶ 31.  To verify his story, Andrews called his girlfriend, who indicated that there was no marijuana in the car.  Id. at ¶ 32.

Dragoi asked Andrews to turn off the car and step out of the vehicle.  Id. at ¶¶ 35-36.  Andrews complied.  Id. at ¶ 35.  Dragoi patted him down before asking him to step to the rear of the car.  Id. at ¶¶ 36-39.  Dragoi's body camera video shows that Andrews

moved to stand behind the car's trunk.  See Video, Def.'s Ex. E (Notice of Manual Filing at Doc. No. 30-7).  After asking the passenger to join Andrews, Dragoi inquired whether Andrews was on probation or parole, and Andrews replied that he was on special parole for assault.  Id. at ¶ 42.

Dragoi proceeded to search the car.  Id. at ¶ 45.  First, he searched the inside of the driver's side door, then moved on to the car's center console.  Id. at ¶¶ 47-50.  The parties disagree as to what happened next.  Dragoi contends that he "lift[ed] what appears to be a change tray out of the center console and flash[ed] his flashlight down into the center console", Def.'s SOF at ¶ 51, after which he "saw two live bullets inside the center console approximately five inches below where the change tray was located before he lifted it out."  Id. at ¶ 52.  Andrews denies this characterization and states that "Dragoi exert[ed] significant physical force and dismantled the interior of the center console to view the interior, mechanical portion" of the car.  Pl.'s SOF at ¶ 51.  Andrews further states that the piece of the center console that Dragoi removed was "sufficiently secured that it [took] Dragoi more than one attempt to remove it . . . ."  Id.

The body camera video is the only basis for Andrews' assertion that Dragoi forcefully dismantled the center console.  See Pl.'s SOF at ¶¶ 51-52 (citing only the body camera video).  The court has carefully reviewed the video.  Andrews is correct that there is some evidentiary support for his statement, in Paragraphs 51 and 52 of his Statement of Facts, that Dragoi exerted considerable force at one point during his search.  Id.  However, based upon the court's review of the video, no reasonable juror could find that the exertion of force by Dragoi occurred before Dragoi, with very minimal effort, removed the change tray, shined his light into the compartment below, exited the

3

vehicle, placed Mr. Andrews in handcuffs, and stated that he had seen bullets before going back to continue searching the vehicle.  See Video, Def.'s Ex. E.

In their Statements of Facts, the parties agree that, after Dragoi removed some component of the center console and looked below, he walked back to Andrews at the rear of the car and placed him in handcuffs.  Joint SOF at ¶ 54.  He escorted Andrews to the police cruiser, telling him "there's a couple rounds in that car."  Id. at ¶ 57.  Andrews asked, "what do you mean?", and Dragoi clarified that he had seen "bullets" in the car.  Id. at ¶¶ 58-59.  Dragoi closed the door to the cruiser and headed back to search the Volvo more thoroughly.  Id. at ¶ 67-68.  As Andrews emphasizes, Dragoi then spent nearly an hour dismantling the center console to reach the rounds.  Pl.'s SOF at ¶ 68.  Ultimately, the parties agree, Dragoi recovered four .38 rounds of ammunition from the car.  Joint SOF at ¶ 69.

    B.    Procedural Background

On March 1, 2021, Andrews filed this action.  In his Complaint, he alleges that Dragoi knowingly falsified his Police Report by writing that he "remov[ed] the loose change container" in Andrews' car rather than stating that he "disassembled the vehicle interior."  See Compl. at ¶¶ 7, 16 (Doc. No. 1).  Andrews claims that, although his possession charges were dismissed after the presiding judge and prosecutor viewed the video of Dragoi's search, id. at ¶ 18, the Police Report led to Andrews' remand to custody and brought about serious emotional and financial consequences.  Id. at ¶ 11.  Andrews further alleges that Dragoi was either negligently or intentionally misleading both the prosecutor and the court in writing his Report.  Id. at ¶¶ 17-19.  As a result of Dragoi's actions, Andrews claims, he suffered violations of his Fourth Amendment right to be free from unlawful seizure and arrest as well as his Fifth and Fourteenth

4

Amendment right to substantive due process.  Id. at ¶¶ 19.  Andrews also claims, in a single sentence of conclusory allegations, that Dragoi's acts amount to tortious misrepresentation, intentional misrepresentation, libel, false arrest, malicious prosecution, and negligence.  Id. at ¶ 20.

On January 1, 2022, Dragoi filed the instant Motion for Summary Judgment, arguing that all of Andrews' claims fail as a matter of law.  See Mot. for Summary J. (Doc. No. 30).  Andrews failed to timely file an Opposition and, on April 19, 2022, the court issued an Order to Show Cause (Doc. No. 31) instructing Andrews to file a response by May 10, 2022.  On May 9, 2022, Andrews filed his Opposition, in which he contends the court should deny Dragoi's Motion for Summary Judgment on two grounds: first, because his car search was unlawful under the Fourth Amendment, and second, because a genuine issue of material fact exists as to whether Dragoi's Police Report statement that he "lifted" the "change tray" was false.  Opp'n at 1-5.

The court now considers Dragoi's Motion for Summary Judgment.

### III.  LEGAL STANDARD

A motion for summary judgment may be granted only where the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.  DISCUSSION

### A.  Abandoned Claims

As an initial matter, the court notes that Andrews' Opposition fails to respond to any of Dragoi's arguments for summary judgment. Dragoi moves for summary judgment as to each of the claims asserted in Andrews' Complaint, including the Fifth and Fourteenth Amendment substantive due process claims, the Fourth Amendment right to be free from unlawful seizure and arrest claim,[1] the libel claim, the negligence claim, the misrepresentation claim, and the false arrest and malicious prosecution claims. See generally Mot. for Summary J. Inexplicably, however, Andrews fully briefs only one issue in his Opposition: whether Dragoi's search of the car was reasonable under the Fourth Amendment. See generally Opp'n.[2]

---

[1] As discussed in the section that follows, see pp. 7-8, infra, Andrews' Opposition addresses unlawful search, but does not address unlawful seizure. Nowhere on the face of his Complaint does he mention unlawful search. See Compl.

[2] Dragoi responds, in his Reply, to Andrews' unpled search claim. See Def.'s Reply (Doc. No. 35).

6

Because Andrews failed to respond to Dragoi's Motion for Summary Judgment as to the Fifth and Fourteenth Amendment substantive due process claims, the Fourth Amendment right to be free from unlawful seizure and arrest claim, his libel claim, the negligence claim, the misrepresentation claim, the false arrest claim, and the malicious prosecution claim, those claims have been abandoned.  See Jackson v. Federal Express, 766 F.3d 189, 197 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); Tinnin v. Section 8 Program of City of White Plains, 706 F.Supp.2d 401, 408 n. 5 (S.D.N.Y.2010) (deeming argument abandoned at summary judgment stage where the "[p]laintiff did not respond to [the] argument in her brief"); Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y.2003) ( "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); cf. Zhang v. Gonzales, 426 F.3d 540, 545 n. 7 (2d Cir.2005).  The court therefore grants Dragoi's Motion for Summary Judgment as to those claims.

      B.     Fourth Amendment: Car Search

          1.     Failure to Plead

Having granted summary judgment as to the claims that Andrews failed to brief, only the Fourth Amendment search claim, which Andrews raises in his Opposition, remains.  However, Andrews' Complaint lacks any claim that Dragoi infringed upon his Fourth Amendment right to be free from unreasonable search.  In other words, while Andrews' Opposition exclusively advances arguments relevant to unlawful searches, Andrews has stated no claim, in his Complaint, that Dragoi violated his Fourth

Amendment right to be free from unreasonable search.  Rather, the Complaint, on its face, alleges only that Dragoi has abridged Andrews' right to be free from unlawful seizure and arrest.  See Compl. at ¶ 19; see also Horton v. California, 496 U.S. 128, 133 (1990) ("The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property.").  Andrews may not raise an unlawful search claim for the first time in his Opposition, nor may he amend his Complaint by writing this new claim into his briefing at the summary judgment stage.  Mosby v. Bd. of Educ. City of Norwalk, 754 F. App'x 34, 37 (2d Cir. 2018) (summary order) (finding that the district court properly refused to entertain arguments plaintiff first raised in briefing in opposition to a motion for summary judgment).

        2.        Reasonableness of Search

Even if Andrews had properly pled a violation of his Fourth Amendment right against unreasonable search, the court would grant summary judgment to Dragoi on that claim because no genuine issue of material fact exists as to whether Dragoi had probable cause to search the car.  Because Dragoi properly determined that probable cause existed, his search was lawful even if, as the plaintiffs contend, he "dismantle[d]" the vehicle.  See Opp'n at 1.

The Fourth Amendment generally requires police to obtain a warrant before conducting a search.  However, "there is a well-established exception for vehicle searches. If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without

8

more." United States v. Jones, 893 F.3d 66, 70 (2d Cir. 2018) (quotations and citations omitted). If this automobile exception applies, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." United States v. Babilonia, 854 F.3d 163, 178 (2d Cir. 2017).

Probable cause is a "dynamic concept", id., and its existence "depends on the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 230-31 (1983). Ultimately, probable cause supporting a search arises "[w]here the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." Jones, 893 F.3d at 71.

The parties agree that, before Andrews exited the car, Dragoi had stated that he smelled "freshly burnt marijuana." See Joint SOF at ¶ 30.[3] Upon smelling marijuana, it became reasonable for Dragoi to believe that he would find evidence of a drug offense in the car. See United States v. Goolsby, 820 F. App'x 47, 49 (2d Cir. 2020), cert. denied, 141 S. Ct. 2818 (2021); see also United States v. Jackson, 652 F.2d 244, 251 n.6 (2d Cir. 1981) (observing that probable cause can arise from a "suspicious smell"); United States v. Holt, No. 3:21-CR-80 (MPS), 2021 WL 5281366, at *5 (D. Conn. Nov. 12, 2021) (discussing United States v. White, 732 F. App'x 597, 598 (9th Cir. 2018), for the proposition that the odor of marijuana was sufficient to provide probable cause to search a vehicle even when possession of medical marijuana was legal under state

---

[3] Andrews does not dispute the lawfulness of Dragoi's initial stop, which required only reasonable suspicion of a traffic violation. See United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009).

law).[4]  Thus, Dragoi had probable cause to search the vehicle from the time he smelled the marijuana.[5]

In his Opposition, Andrews asserts that Dragoi's search of his car exceeded the scope of the automobile exception to the warrant requirement because Dragoi "dismantle[d] the vehicle."  See Opp'n at pp. 1-4.  For the proposition that dismantling a vehicle does not fall within the automobile exception, Andrews cites two out-of-circuit cases, United States v. Barnes, 374 F.3d 601 (8th Cir. 2004) and United States v. Patterson, 65 F.3d 68 (7th Cir. 1995), neither of which supports his argument.

Indeed, when read in their entirety, both Barnes and Patterson support the proposition that an officer may disassemble a vehicle in search of illicit goods once he has probable cause to believe that the car holds contraband.  See Barnes, 374 F.3d at 604-05 (holding that once an officer recognized probable contraband in a vehicle, "he had probable cause to search the entire vehicle" by dismantling the driver's side door "and was permitted to do so without a warrant."); Patterson, 65 F.3d 68 (holding that officers could dismantle the defendant's tailgate once they had "probable cause to believe that drugs were inside the vehicle.").  This is consistent with the Second Circuit's approach to the vehicle exception to the Fourth Amendment warrant requirement.  See

---

[4] The court notes that Dragoi's stop occurred in 2018, years before recreational marijuana use was legalized under Connecticut law in 2021.  See Conn. Gen. Stat. § 21a–408 et seq.; CT LEGIS 1SP 21-1 (S.B. No. 1201), 2021 Conn. Legis. Serv. June Sp. Sess. P.A. 21-1 (S.B. No. 1201) (S.B. 1201). The 2021 legislation specifies that "the odor of cannabis or burnt cannabis" no longer constitutes probable cause for a vehicle search under state law.

[5] In his Opposition, Andrews states that he "does not dispute that the smell or sight of marijuana gives reasonable suspicion to search a motor vehicle subject to the automobile exception to the warrant requirement."  Id. at 1-2. While Andrews appears to be conflating the standards of "reasonable suspicion" (a lower threshold required to effect a traffic stop) and "probable cause" (a higher threshold required to search a vehicle), he proceeds to cite three cases in which an officer's smelling or seeing marijuana in a vehicle constituted probable cause.  See id.  It seems, therefore, that Andrews does not dispute that Dragoi smelled marijuana and does not dispute that Dragoi had probable cause to search the car.

Babilonia, 854 F.3d at 178 (explaining that the vehicle exception "justifies the search of every part of the vehicle") (emphasis added) (citation omitted).[6]  In the instant case, there is no genuine issue of material fact as to whether Dragoi had probable cause to search the vehicle for contraband after smelling marijuana.  Thus, even construing the disputed facts in the light most favorable to Andrews, who argues that Dragoi "dismantle[d] the vehicle", no reasonable juror could find that Dragoi's search was unlawful.

The court's careful review of Dragoi's body camera video reveals that Andrews' version of the facts misconstrues the sequence of events during the stop.  See Pl.'s SOF at ¶¶ 51-52.  Video evidence—the only evidence to which Andrews cites in his Statement of Facts to dispute Dragoi's statement that he removed the loose change tray—does support Andrews' assertion that Dragoi "exert[ed] significant physical force" at some point during the search to dismantle the car.  See id.; see also Video, Def.'s Ex. E.  However, the video reveals that the search occurred in two parts, and that Dragoi forcefully dismantled the vehicle only after seeing bullets in the car.  Video, Def.'s Ex. E.  In the first stage of the search, after smelling marijuana and asking Andrews to step out of the car, Dragoi swept the drivers' compartment and applied very little force to remove the bottom, detachable portion of the central console, i.e.. the loose change container.  Id.  He shined his flashlight down into the console, then stepped away from the car to put Andrews in handcuffs and place him in the police cruiser.  Id.  After acknowledging

---

[6] This is not to say that the Fourth Amendment permits an officer to indiscriminately damage an individual's property in the name of a search.  To be sure, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." United States v. Ramirez, 523 U.S. 65, 71 (1998); see also United States v. Howard, 489 F.3d 484, 497 (2d Cir. 2007) (same).  Such excessive destruction is not at issue here.

that he had seen bullets in Andrews' car, Dragoi returned to the vehicle for the second part of the search. Id. At this point, Dragoi applied much more force and used tools to take apart the center console to retrieve the ammunition he had seen. Id. Thus, a reasonable juror could find that Dragoi used "significant physical force" at some point during the search. However, the video shows that, when Dragoi employed meaningful force to disassemble the center console in the second part of the search, he had already seen the ammunition in the car. More importantly, even if a jury were to find, contrary to the video evidence, that Dragoi forcefully dismantled the vehicle during the first part of his search, this fact is immaterial: as the court has discussed above, Dragoi had probable cause to conduct a full search from the moment he smelled freshly burnt marijuana. See pp. 9-11, supra

Therefore, to the extent that Andrews claims that Dragoi's search violated his Fourth Amendment rights, the court grants summary judgment to Dragoi.

C. Fourth Amendment: Unlawful Seizure and Arrest

Andrews also claims that Dragoi violated his right to be free from unlawful seizure and arrest. See Compl. at ¶ 19. Dragoi moves for summary judgment as to this claim on the ground that he had probable cause to arrest Andrews. See Opp'n at 6-14.

Andrews offers very little in the way of explanation or argument to support his unlawful seizure and arrest claim. Reading Andrews' Opposition generously, one paragraph could also be construed to challenge the veracity of Dragoi's Police Report statement that he lifted the change tray out of Andrews' car. See Opp'n at 4; see also Compl. ¶¶ 7-10, 16 (alleging that Dragoi's Police Report statement that he found ammunition after "removing the loose change container" was false and caused harm to

12

Andrews).  However, it is unclear to the court whether Andrews contends that Dragoi's allegedly false Police Report statement constitutes evidence of his Fourth Amendment seizure claim.  In any event, the body camera video reveals that Dragoi placed Andrews under arrest after doing exactly what he described in the Report: removing the loose change container.  See Video, Def.'s Ex. E; Police Report (Doc. No. 32-2).  Moreover, the Police Report does not simply state that Andrews removed the change container.  Rather, the Report goes on to explain that Dragoi conducted a "further search of the vehicle", after removing the change container and handcuffing Andrews, which ultimately yielded four .38 automatic rounds.  See Police Report.  No reasonable juror could find that Dragoi's Police Report was falsified on the basis of the record evidence.

Notwithstanding the veracity of the Police Report, Andrews' false arrest claim fails as a matter of law because Dragoi had probable cause to arrest him.  It is undisputed that Andrews was driving without a license, and this alone would provide probable cause for his arrest.  See, e.g., Cozayatl Sampedro v. Schriro, 377 F. Supp. 3d 133, 139–40 (D. Conn. 2019) (determining that a state trooper had probable cause to arrest plaintiff for driving without a license in Connecticut and, thus, plaintiff failed to state claim for unlawful seizure under the Fourth Amendment).  As the Second Circuit has made clear, "probable cause as to any charge at the time of arrest is sufficient to defeat a false arrest claim as a matter of law."  Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  Accordingly, the court grants summary judgment to Dragoi as to Andrews' Fourth Amendment seizure and false arrest claim.

## V. CONCLUSION

For the foregoing reasons, the court grants Dragoi's Motion for Summary Judgment (Doc. No. 30) in full.

**SO ORDERED.**

Dated at New Haven, Connecticut this 8th day of July, 2022.


          /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge